SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JOSEPH H. HUYNH, DC #495403**
Assistant United States Attorney
Joseph.Huynh@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
**TENETTE SMITH**
Trial Attorney-Civil Rights Division
Tenette.Smith@usdoj.gov
150 M. St. NE
Washington, DC 20002
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:21-cr-00445-MC** |
| **v.** | **UNITED STATES' SENTENCING MEMORANDUM** |
| **ANDREW MCGEE,** | |
| **Defendant.** | |

Andrew McGee planned for weeks to carry out a vicious attack on a man because of his sexual orientation.  Weeks in advance, McGee searched for and viewed homophobic and graphicly violent anti-gay material, purchased a weapon, gloves, and a short black wig online, and researched how to get away with murder—including how to dispose of dead bodies.  When McGee finally entered Victim 1's apartment, he used a tire thumper to repeatedly hit Victim 1 in the head behind closed doors.  The noise from the beating and Victim 1's cries were so loud that neighbors could hear them through closed doors, so they contacted the police to intervene.

**United States' Sentencing Memorandum**                                         **Page 1**

When police arrived, they located a bloodied McGee and Victim 1 on the ground missing a chunk of his scalp, which was laying on the ground next to him.

It is now time for McGee to be held accountable for his brutal, premeditated attack on Victim 1, who survived the devastation and pain Defendant caused, and the community for this vicious hate crime.  Accordingly, the Government believes a high-end guideline sentence of 188 months, followed by a term of five years of supervised release, and restitution in the amount of $943.95 is warranted.

## I.      The Offense Conduct

On July 5, 2021, McGee targeted Victim 1 through the dating application Grindr, an application designed for, and used largely by, gay men.  McGee used Grindr and Snapchat as a means to set the victim up for the assault.  McGee suggested going to Victim 1's house so the two could cuddle.  When McGee arrived at Victim 1's home, McGee immediately attacked Victim 1 and, over the course of several minutes, repeatedly struck the victim on the head with a wooden "tire thumper."  Victim 1 repeatedly pled for McGee to stop, but the attack continued. At points, McGee used his hands to try to gouge Victim 1's eyes out.  The only break in the assault occurred when McGee stopped so he could dead bolt Victim 1's door.

Victim 1's neighbors called 911 after hearing Victim 1 screaming for help. W hen the police arrived, McGee was covered in Victim 1's blood but did not appear to have suffered any injuries.  Eugene Police Department (hereinafter "EPD") officers observed a bloody wooden object laying inside the front door of Victim 1's apartment.  McGee identified the object as a tire thumper, a tool commonly used by truck drivers to check for sufficient tire pressure.  McGee falsely told officers he found the tire thumper in a parking lot.  McGee informed EPD officers

**United States' Sentencing Memorandum**                                      **Page 2**

that he was not injured, aside from a hurt finger, and that the blood covering him was Victim 1's blood.

Victim 1 sustained life-threatening injuries during the assault and was promptly transported to PeaceHealth Riverbend hospital in Eugene, Oregon.  Victim 1 suffered serious head wounds, including multiple lacerations to the sides and back of his head.  As a result of the attack, a large section of Victim 1's scalp, covering an area of roughly four inches by five inches on the back of his head, was missing.

McGee said he hit Victim 1 with the tire thumper and his fists and confirmed that Victim 1 had not attacked him.  McGee initially denied targeting Victim 1 because the victim was gay claiming that there were demons there and he intended to "slay" the victim and "get rid of [Victim 1]."

However, further investigation revealed that for at least one month prior to the attack, McGee used the internet to search for and view homophobic and graphicly violent anti-gay material.  Specifically, McGee searched "Russia gay bashing," "homophobia," "why homosexuality shouldn't be allowed in the military," "homosexuality destroys nations" and more.  McGee also frequented a website called Kaotic.com, known for its "graphic videos" and "extreme content," where he watched videos of people, some specific to gay people, being harmed, beaten, or otherwise assaulted due to their sexual identity.

His search history also included research about how to successfully use Grindr.  McGee also searched for and accessed numerous articles related to crimes committed by individuals using Grindr to target their victims.

McGee's phone and search history further revealed that McGee had been planning the attack for weeks, purchasing the weapon used in the attack along with sunglasses, gloves, and a

**United States' Sentencing Memorandum**                                          **Page 3**

short black wig.  A search of McGee's cell phone and bedroom computer revealed extensive

search and web activity related to executing murders, how to get away with murders,

investigative techniques that lead to solving murders, and how to dispose of dead bodies.

Law enforcement subsequently located McGee's bag in the victim's bathroom.  The bag

contained: a portable vacuum, an 8" Bombay kitchen knife, a folding knife, a large roll of trash

bags, a bottle of Comet cleaner, a brown extension cord, a phone charger, a piece of unused

paper that appeared to be torn out of a notebook, and two pencils.

## II.     The Plea Agreement & Guideline Computations

On November 25, 2025, the Defendant pled guilty to a single count Indictment, which

charged him with willfully causing bodily injury to Victim 1 because of Victim 1's actual and

perceived sexual orientation, in violation of 18 U.S.C. § 249(a)(2).  The offense included an

attempt to kill Victim 1.  The statutory provisions carry a maximum sentence of life

imprisonment.  Pursuant to the plea agreement, the Government recommends the following

sentencing computations:

| U.S. Sentencing Guidelines Provision | Government's Position |
|---|---|
| Base Offense Level—<br>USSG § 2A2.1(a)(1) | 33 |
| Permanent or life-threatening injury—<br>USSG § 2A2.1(b)(1)(A) | +4 |
| Hate Crime Motivation—<br>USSG § 3A1.1 | +3 |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -3 |
| Early Resolution—<br>18 U.S.C. § 3553(a) | -3 |
| **Total Offense Level** | **34[1]** |

[1] The PSR calculates the total offense level at 37 which excludes the additional three-level downward variance for early resolution. This variance is addressed in paragraphs six and ninety of the PSR.

**United States' Sentencing Memorandum**                                        **Page 4**

| Resulting Guideline Range | 151 - 188 months (CH CAT I) |
|---|---|

The Government agreed in the plea agreement to recommend a guidelines sentence in accordance with the above-calculated range. The defendant agreed not to seek any downward departures or adjustments but reserved the right to seek a downward variance under 18 U.S.C. § 3553.

## III.    Government's Recommended Sentence

Applying the 3553(a) factors for this case and consistent with the plea agreement, the Government is recommending the Court sentence at the high end of the guideline range as set forth above.

### A.  The Nature and Circumstances of the Offense

McGee committed a heinous and unprovoked assault on an unsuspecting victim within the sanctity of the victim's own home. He watched gruesome videos and planned the attack on the victim by purchasing the weapon and other items to assist him with carrying out the attack and getting away with the crime. McGee told officers that he was at the victim's home that night to kill the victim, and without the intervention of the neighbors, McGee might have succeeded in his plan. The recommended sentence is sufficient to hold the Defendant responsible for his actions, but not greater than necessary.

### B.  Defendant's History and Characteristics

The Defendant has one conviction for misdemeanor criminal mischief, which occurred at the jail while he was incarcerated for this matter. He served 18 days in county jail for this conviction.

**United States' Sentencing Memorandum**                                        **Page 5**

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

McGee committed a brutal assault that he planned and executed according to his plan.  A sentence sufficient to reflect the seriousness of such a brutal hate crime is necessary to promote respect for the law, regardless of differences in ideologies or lifestyle.  A sentence that reflects the Defendant's extreme conduct and the seriousness of the crime is necessary.

Additionally, the Criminal Injuries Compensation Account for the Oregon Department of Justice Crime Victim and Survivor Division provided Victim 1 with $943.95 for loss earnings as a result of the attack.  Victim 1 has managed to recover from this horrible crime and is not seeking any restitution at this time.  However, McGee should, at a minimum, be required to repay the Oregon Department of Justice for its related expenses to help Victim 1.

### D.  The Need for the Sentence to Afford Adequate Deterrence

The sentence imposed by this Court must send a message to others that assaulting other individuals based on a difference in beliefs, lifestyle, sexual orientation, or the like, will not be tolerated.  Hate crimes are serious offenses and cannot be tolerated or minimized.  General and specific deterrence of future hate crimes is important in this case and should be reflected in McGee's sentence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

Guideline 2H1.1 is the primary guideline for a broad range of Civil Rights offenses and thus it is not easy to compare based on the variation in criminal conduct.  However, when referencing the underlying offense of assault with the intent to commit murder, 2A2.1, 39% of defendants sentenced in the last 5 years were sentenced to between 10-20 years of imprisonment. Furthermore, 20.1% of defendants were sentenced to between 20 years to life imprisonment.

**United States' Sentencing Memorandum**                                              **Page 6**

Given the gruesome nature of the attack and the planning and premeditation, a guidelines sentence is appropriate.

**IV.    Conclusion**

Accordingly, for the reasons set forth above, the Government respectfully recommends a high-end guideline sentence of 188 months, followed by a term of five years of supervised release, restitution in the amount of $943.95, and the $100 special assessment.

Dated: February 25, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Joseph H. Huynh*
JOSEPH H. HUYNH
Assistant United States Attorney

*/s/ Tenette Smith*
TENETTE SMITH
Trial Attorney, Civil Rights Division

**United States' Sentencing Memorandum**                    **Page 7**